If it pleases the Court, my name is Michael Bigelow, and I do represent Mr. Seeboth, who is the appellant in this matter, and I'd like to reserve a couple of minutes, if I may, for reply. From my perspective, from my perspective, this case is all about the evidence that was not presented or inadequately presented to the State Appellate Court. And that is... Counsel, one of the things that's of consternation to me here is... Excuse me. I apologize. I've got really good bionics. If the Court could sort of lean into the microphone, I would greatly appreciate it. Oh, I apologize. Thank you. One of the things that is somewhat a question in my mind is, which of the State Court decisions are we reviewing here? Are we reviewing the final one where the Supreme Court cites Duvall and then making sense out of that? Are we looking behind that? Which decision are we considering? The subject of the request for supplemental briefing. I think that the Court reviews the California Supreme Court decision that cited Duvall. To me, that is the final decision. Okay. And that citation to the page that the Court relied on has the word procedure in the heading, but the discussion also includes a discussion of whether the facts taken as true equate to a claim. In other words, a merits kind of decision. The facts being what they are, you still haven't stated a claim. And here where you are making a facial challenge to the statute, isn't that the best reading of what the Supreme Court is doing because procedurally there are no facts? But, Your Honor, this Court in cases too numerous to cite, but in, and I do, and I'm blocking on it, but it's in my brief, have treated Duvall citations as demers. Well, some of them are and some of them aren't because the Court is, and so don't we have to look at the context of the particular case, and here where you're making a facial challenge to the statute, it's hard to imagine what procedural error there could be as distinct from a merits determination that you don't have a claim. Well, then we're paying short shrift to the California Supreme Court, which cites Duvall for these purposes, for the fact that there's, he hasn't stated a cause of action or he's provided insufficient documentation. Well, those are two different things. The documentation is procedural. Deciding that your claim is no good is a merits decision, isn't it? It has been held to be a demur in a number of cases by this Court, at least the way I read the cases. If that's the way this Court reads it and decides it and splits that off, splits that analysis off, then a whole new line of cases, it seems to me, is going to have to come from this Court. Okay. Under certain circumstances, we look at the context of the initial defined, we look to the context of the superior court or the lower court finding in great detail to decide whether or not the California Supreme Court's decision in Duvall means this or it means that. And we don't have that out of this Court. I don't think we have that out of this Court. We don't have that out of the district courts, at least out of the district courts in this circuit. Then, assuming that line of thought is not available to us, why isn't the State Court's decision the right decision regardless of our standard of review? Why isn't it permissible for the State to distinguish between types of civil committees? But in my view, we still win because the district court evaluated the case and discounted Backstrom, which is a United States court decision. And we get to the we get to an we get back to an analysis of the facts of the facts of the case as determined by the California courts. And under the California appellate court decision in McKee, they reached a wrong conclusion on those facts. They said that there is recidivism. SVPAs, SVPs have a higher recidivistic rate than do MDOs. What are we basing that on? Well, we don't have any evidence to base that on. And they admit that. They admit that they do not have any concrete evidence to base their decision on. And so it they have not decided the case within the bounds of United States Supreme Court decisions. They admit that nobody has ever compared MDOs to SVPs. They acknowledge that. When they rely on the Static 99, they rely on it to prove something that nothing else could prove. But we know from other district court cases, one other district court cases, which actually did look behind the Static 99, the fact which isn't offered to us from the California court, we look to that case, and they say, the Federal District Court says, look, the authors of the Static 99 say it only has a moderate success of predictability. From the stuff that is provided to this court, additional secondary authorities or we know that the authors of the instrument, the Static 99 test, are saying exactly the same thing. And we're saying apparently the same thing back during the evidentiary hearing in McKee, yet that doesn't come out. I would love to have, and I think this Court deserves to know and deserves to have, the evidence that was adduced at the McKee hearing. It doesn't have it. We could get it. This Court could remand back. We could have an evidentiary hearing on whether they actually do prove what they say they prove. The record at Stantt fairly clearly says or shows that they don't. Roberts. Could you just clear up one point for me, and it's maybe in the record. I can try. And that is what is the actual difference that you're talking about between your class, your client and the class he belongs to, and the other classes that you say are treated more favorably than him? Is it that your client never gets a rehearing or he just doesn't get 30 days' notice prior to the end of his term of commitment? He doesn't have a right to a trial. MDOs have an absolute statutory right to a jury trial. And the finding of that jury trial, by the way, is beyond a reasonable doubt. SVPs, once they are committed, we're talking about secondary commitment. We're not talking about initial commitment. Right. We were talking about initial commitment in the case that preceded. But the initial commitment must be of a certain degree. It can't be of a certain kind, right? I'm sorry? It can't just be committed for anything. It has to be commitment for the initial. But we're not talking. That's correct, yes. But we're not talking about the initial commitment. We're talking about secondary commitments. I know that's what you want to talk about. But the initial commitment matters because it has to be certain things that have been proven in the first commitment. Correct. Okay. What are those requirements? They are laid out in McKee. And they — But they're fairly elaborate, right? So the question is, then, once that has been determined, if you have a second commitment, you get lesser procedural rights. Once they have been committed, once an MDO has been committed and once an SVPA has been committed, civilly committed, they are, for equal protection purposes, identical. They are the same. I know this court has parsed out some distinctions. But those are distinctions, if the court will forgive me, without meaning. The two categories need to be only reasonably similar. They need to be only reasonably similar. But once they have been committed, the recommitment — there is no recommitment trial. Trial. There is no right to trial for an SVP. There is a right to trial every year for an MDO. That's a big difference. Backstrom says if you're going to civilly commit one group of people, you need to provide the same procedural safeguards. Why? Why can't the State say these guys are much worse and they get treated differently? Well, Backstrom says that they can't, but Backstrom says — okay, I understand the — I'm answering a different question. It's always good to answer the question you're being asked. But the answer to your — I don't think that they can say that one group is worse without evidence to support that finding. And there is no evidence to support that finding from the record extant, Your Honor. I'm sorry. What do you mean? I mean, they get committed and classified differently. I'm sorry, Your Honor. They are committed and classified differently, right? One of them has to be a predator and — They are civilly committed. One is an MDO. They are not — they are classified differently. But as the McKee court — But they're not classified differently randomly. They are classified differently based on evidence presented at the first hearing. But that evidence — and I brief it thoroughly, Your Honor. I brief it thoroughly. That evidence is suspect. That evidence is only — leads — the authors of the evidence, the Static 99, that's the only evidence that counts, Your Honor. There's no other evidence to support the finding that SVPs recidivate at a greater rate than MDOs. There's no other evidence. None. None. None. And the court says MDOs and SVPs have never been compared for recidivism rates. I am a — I rate — Why does recidivism matter? I'm sorry? Why is recidivism the only thing that matters? I didn't hear the last words. Why does recidivism — when you focus on recidivism, why is that the only metric that matters? Why is it the only thing that matters? Yeah. The Static 99? Maybe dangerousness matters. Maybe one is more dangerous than the other. Because the Static 99 test is the only thing that matters because the California appellate court said it's the only thing that matters. We're basing our decision only on the Static 99 test. Nothing else. But you're raising — you're raising a Federal equal protection claim. Correct. And when we evaluate under Federal law, can't we look at any of the things that the legislature might have had in mind in distinguishing between these groups of people, all of whom have been committed of — have been convicted of committing various different types of crimes and previously civilly committed? But in order to justify the distinction, either under rational basis — and I submit that rational basis is too low a standard — but even under rational basis, there's got to be a reason for the distinction. Right. But it is not limited normally to one reason. And it's not limited to what a State court might have said about those reasons. Any other reason is pure, unadulterated speculation. But isn't that what we do with rational basis review when we say — because normally the legislature doesn't tell us what it had in mind, and so we look at the two groups that are treated differently and we say, what could the legislature reasonably have had in mind? Isn't that what we always do? What are you going to base it on, Your Honor? What are you going to base it on? You need something to base it on. There's nothing to base it on. The California Supreme Court says, we don't have anything to base this decision on. If the California Supreme Court, after a 21-day hearing — Oops. If I did that, you'd kill me. If the California Supreme Court said, we don't have a basis for making this decision, other courts have said, and the authors of the instrument themselves say — Isn't the difference between the two groups that one involves sex, sexual offenses, the other one doesn't? One can involve — one does involve sex. The other does not necessarily involve sex, but it can. It's not preclusive. It's not — it's not preclusive. Why isn't that a distinction that itself is rational, saying those involving sexual offenses just get treated with more caution and we are going to be less likely to let them out than the people who just have other kinds of mental illness? Seems to make — may not be the decision you and I might make, but why is that irrational? The stated reasoning behind the statute — the stated reasoning behind the statute — Well, why don't you answer my question, and then you can give me your stated reason. I'm — Why is it not rational for the legislature to say, look, people who violate other people's sexual — you know, rights to sexual privacy and autonomy get treated differently, are more dangerous than people who are mentally deranged in other ways? They could write a statute, I suppose. They could write a statute that would encompass that and say we are going to — So you are saying it is rational to treat them differently, but you think the statute doesn't do it. Is that what you're saying? I'm saying that the statute doesn't do that. The statute speaks to recidivism. The statute says we are classifying or we are depriving citizens who are going to recidivate at a greater rate than another class of citizens, even though they are both — all findings are — all findings, the two are similarly situated. We are going to classify or deprive one group, the group who recidivates the greatest. We're going to deprive him of a trial, whereas the other group, we're going to give them a trial every year. But, again, I hate to beat a dead horse, nobody has ever compared the two. Nobody has ever said these guys over here, because they commit sex offenses, recidivate at a greater rate than these guys over here who are — What if you have two groups that have the same rate of recidivism, but one of them is just more dangerous? So if you have recidivism at the same rate, but with far worse consequences, why can't the legislature say even though the recidivism rate may be the same, the risks from recidivisms are greater, and so we're going to treat them differently? If there were — I'm answering your question. If there were evidence to support your thesis, yes, I suppose that's true, but there's no evidence to support — You don't need evidence to realize that people who violate other people sexually are in a different class from other kinds of mentally deranged people. There are also the whole range, but when they go around violating, committing sexual violations, isn't that something inherently different, and a rational person might think it's worse? Isn't that the kind of thing that we look at legislature or ask ourselves, could a rational legislature have come to that conclusion, and if we think it could, then that's the end of the equal protection analysis. Everything else has to go back to the legislature, and if you think the law is bad or misguided, you know, that's what the legislature is there to do, is correct such — People who commit crimes probably don't have the same — people who commit capital murder probably don't have the same rights as people who do not commit. They commit a homicide. But procedurally, they're entitled to the same protections. I found what I was looking for, if I may, Your Honor, the similarities. Both mentally disordered offenders and MDOs, sexually violent predators, have been found beyond reasonable doubt to suffer from a mental disorder that's a danger to others. One, danger, finding requirements and assessment of future dangerousness, which is what the Court is talking about, both have been found to be future — have been found to be a danger for the future. It does not require proof — neither requires proof of a recent overt act. Both have been convicted of a serious or violent felony. At the end of their prison terms, both have been civilly committed to the California Department of Mental Health for treatment of their disorders. Furthermore, the purpose of the Mentally Disordered Offender Act and the Sexually Violent Predator Act is the same, to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for the disorders. Baxter says — Backstrom, I apologize. Backstrom says we've got to give both these guys or gals the same procedural safeguards. MDOs get a trial. SVPs don't. Okay. Thank you. My time is way up, and I'll keep going if you want me to. I think we understand your position. Can I have 30 seconds to respond? Because I know we're counsels. We'll see. Thank you. Maybe the state won't say anything, in which case there will be nothing to respond to. Good morning, Your Honors. Tammy Crenzen for the respondents. I first want to address Judge Graber's question about the merits ruling. The last reason decision is the California Supreme Court's order and the site to devolve. What makes the cases distinguishable, what makes this case distinguishable and a purely devolve site from other cases is the Swain site is included in the cases that opposing counsel has cited. Swain allows a petitioner to go back and try to fix what can be fixed. There's nothing in devolve that suggests that it can be fixed. And in any ambiguous site, we presume that there's a merits ruling, and particularly in this case when there is no reason to think there was any procedural reason that his petition would have been dismissed in state court. Let me just interrupt. Your brother suggests that interpreting the California Supreme Court's decision that way is completely contrary to the law up to now. Is he wrong? In essence, he seemed to argue that we're bound to assume that the ruling here was procedural and not on the merits. And if we go in a different way, we're going to have to rewrite the law as it's existed up to now. Do you disagree with that? And what authority can you cite to me for your position on that? Yes, I do disagree, Your Honor, because the cases that opposing counsel cited as brief, as the long history indicating those are procedural decisions, are not reliant on a site only to devolve. It's Swain and devolve. Swain is the key issue. Swain with any site means without prejudice you can go back and try to fix what's missing. What effect, if any, does our recent decision in Curiel have on your argument about which decision we're looking at that was decided last month, less than a month ago? It seems to suggest that a cursory California Supreme Court decision that cites a couple of cases isn't really a reasoned decision. Now, that may or may not be right. The mandate hasn't issued in that case. But does that undercut your theory? Your Honor, I'll admit I'm not familiar with that decision. But as far as whether what we are looking at with the Duval site, the Duval at page 74 summarizes a burden for a prima facie case, and that the petitioner must allege he is illegally in custody, then he must allege fully and with particularity what historical facts, if true, purport to make that custody illegal and provide to the court a concrete basis, including reasonably available documentary evidence to find those historical facts are true. That necessarily entails any one other than the just failure to simply provide documentary evidence. The others are merits rulings saying your claim fails. We know in this case that they found he did not state a case for relief. And Harrington v. Richter, we presume that there's a merits decision unless that presumption is overcome. And here that presumption cannot be overcome with an ambiguous site. Does it matter which decision we are looking at from your point of view? Would we reach the same result whichever decision we're examining? Do you mean the California Supreme Court case compared to the California Superior Court? Well, the California Supreme Court is the last reason decision. I understand that. That wasn't my question. I know that's your argument. Does it matter whether we were, from your perspective, if we were to review de novo, if we were to review the Superior Court, if we were to review the Supreme Court, does it end up making a difference to the analysis on the merits? I'm sorry. I think there's two questions there is the whether you can look at the California Superior Court case and then would this case make any difference if we were looking under de novo review. Right. Is that correct? Well, first of all, again, there is no basis to look at the California Superior Court decision because it isn't the last reason decision. And under AADPA review, that's the only decision we look at. Regardless of whether this court applies the standard that we believe is applicable to AADPA or de novo review, we get to the same result because the issue boils down to whether the legislature could conceivably treat the sexually violent predators as compared to other mentally disordered offenders different in that. And to be clear in this case, the issue is under the prior SVP Act whether the SVPs are treated less favorably because they can be held without a timely hearing. And in effect indefinitely. And the answer is yes. Under either standard, the legislature had a conceivable basis to determine that SVPs are a more dangerous group of individuals who are not likely to change. And in fact, the legislature has as of 2006 has fixed that problem and has said because these people are not likely to change or that certainly could be their conceivable basis, it's pretty clear that they have now made indeterminate decisions because these individuals are not expected to change. And this court as well as the California courts have recognized that these two groups are distinguishable. And unless this court has any further questions, I'll submit. Thank you. You wanted 30 seconds. We'll give you a minute. How about that? I thank you. And the case that I wished to cite to you was Gaston having to do with. I'm sorry, how do you spell that? Gaston versus Palmer, 4-17, Fed 3rd, 10-30, 2005. Gaston v. Palmer, which I cite in my supplemental brief. It lays out the groundwork, the background at least, I guess, for Duval as a procedural, denial on procedural defect as opposed to a procedural bar. I would submit it. Thank you very much. Okay. Thank you. The case is how you will stand submitted.
judges: Ponsor, Kozinski, Graber